FILED
BILLINGS, MT

2005 FEB 10 AM 9 02

PATRICK E. DUFFY, CLERK

BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| HENDERSON DuVAL HOUGHTON, ) | Cause No. CV 05-139-BLG-RWA |
| Plaintiff, ) | |
| vs. ) | FINDINGS AND RECOMMENDATION |
| ) | OF U.S. MAGISTRATE JUDGE |
| DAVE COMFORT; TERRANCE ) | |
| PETERSON; and RICH ST. JOHN, ) | |
| Defendants. ) | |

On October 4, 2005, Plaintiff Henderson Houghton filed this action under 42 U.S.C. § 1983. He is a federal prisoner proceeding *pro se*. Pursuant to a settlement agreement in another case, see Stipulation and Order of Dismissal at 1, ¶ 2, *Houghton v. Nybo*, No. CV 03-27-H-SBC (D. Mont. Aug. 5, 2005), the Court will, for present purposes, consider the instant Complaint to have been filed on January 15, 2001.

## I. Preliminary Screening

Pursuant to the federal statutes governing proceedings *in forma pauperis* and proceedings by prisoners, federal courts must engage in a preliminary screening of cases to assess the merits of the claims. 28 U.S.C. §§ 1915(e)(2), 1915A(a); 42 U.S.C. §

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

1997e(c)(1); *Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc). The court must identify cognizable claims, or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief can be granted, or if the complaint seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c)(1).

Although the statute requires a dismissal for the reasons stated, it does not deprive the district court of its discretion to grant or deny leave to amend. *Lopez*, 203 F.3d at 1127. The court can decline to grant leave to amend if "it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Leave to amend is liberally granted to *pro se* litigants unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (citing *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)). Additionally, the courts must liberally construe *pro se* pleadings. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## II. Houghton's Allegations

Houghton alleges three violations of his right to due process. First, he claims that Defendants Comfort and Peterson unlawfully

seized his computer. Second, he claims that Defendants Comfort and St. John unlawfully forfeited his property. Third, he claims that Defendants Comfort and Peterson gave false testimony against him in a federal criminal trial at which he was convicted of possession of child pornography. All three defendants were officers of the Billings Police Department at the time of the acts alleged.

In his first claim, Houghton alleges that he voluntarily turned his computer over to Comfort on March 11, 1997, because he knew there was no evidence of crime contained on it and because he would be allowed to get the computer back the following day when he paid the purchase price for it.[1] Houghton consented to allow Comfort to search the computer for evidence of child pornography. See Compl. (doc. 1) at 5-6, ¶ IV.A.2.(j)-(o). When Houghton attempted to get the computer back on March 12, Comfort "confronted Houghton with three images that did not come from his computer, and appeared to be adults made to look like minors." Id. at 6, ¶ IV.A.2(q). Comfort refused to give Houghton the computer and told him that the FBI had taken it. Id. at 6, ¶ IV.A.2.(p)-(r). Peterson and Comfort both wrote police reports in which they stated that child pornography was found on the computer; Peterson added that an FBI agent named Jones "witnessed that discovery." Id. at

---

[1] Houghton originally purchased the computer with funds from a check that turned out to be fraudulent. Houghton avers that was cleared of any wrongdoing in connection with that transaction. See Compl. at 4, ¶ IV.A.2.(a)-(d).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 3

3, ¶ IV.A.1.(a)(ii), (iii), (b)(i), (ii).  However, Houghton learned in August 1999 that the FBI had never taken possession of the computer, and Houghton was never charged with a crime based on the images allegedly contained on the computer seized in 1997. Comfort later testified in federal court that 450 images of child pornography were found on the computer, but there was no physical evidence to present because "two discs containing a copy of four images somehow came up missi[ng] before Federal Agents picked them up."  Compl. at 3-6, ¶ IV.A.1-2; *id.* at 11, ¶ IV.C.2(c)(iii).

In his second claim, Houghton contends that Comfort released the computer to Glacier Bank, the entity that was fraudulently induced to provide the funds with which Houghton had purchased the computer.  Comfort justified the release to Glacier Bank by claiming that Houghton had obtained the computer by committing a fraud upon Glacier Bank, but, Houghton contends, Comfort had no evidence to support that claim.  Houghton also alleges that Defendant St. John, a lieutenant in the police department, relied on Comfort's false allegation of fraud to justify releasing the computer to Glacier Bank.  *See* Compl. at 7-8, ¶ IV.B.1-2.

In his third claim, Houghton asserts that Comfort and Peterson made false statements at his federal criminal trial for possession of child pornography in September 2000.  Their testimony was admitted under Fed. R. Evid. 404(b) "to establish that Houghton had

a predisposition to receive and possess child pornography."[2] Houghton contends that Comfort and Peterson falsely testified, in conformity with their reports, that 450 images of child pornography were found on Houghton's computer in 1997, that an FBI agent was present when the images were discovered, that the computer was released to Glacier Bank in November 1997 because Houghton obtained the computer by fraud, and that the only reason Houghton was not charged with a crime in 1997 was that two discs containing four images were lost. *See* Compl. at 9-11, ¶ IV.C.1-2.

For his relief, Houghton seeks compensatory damages and possibly punitive damages[3] from the defendants. *Id.* at 13-15, ¶ V.

### III. Analysis

Houghton asserts that the defendants violated his right to due process. The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Am. XIV, § 1.

Initially, the Court notes that Houghton's dates do not add up. He says that, at the direction of Charles Connelly, he deposited a check that turned out to be fraudulent in an account at

---

[2] Houghton also asserts that such predisposition "was an essential element the Government must prove to convict." It was not. The elements are found in the statute Houghton violated, 18 U.S.C. § 2252A(a)(2) and (5)(B).

[3] Houghton asks for compensation from all three defendants, but he contends that the payment of compensation by one defendant should not reduce the liability of any other defendant.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 5

Glacier Bank in April 1997. *See* Compl. (doc. 1) at 4, ¶ IV.A.2(a). He says that he transferred some of those funds to one of his own accounts and then bought a computer with a check drawn on his account. *Id*. at 4-5, ¶ IV.A.2(a)-(i). But he says that he was interviewed about possible bank fraud and consented to seizure of the computer on March 11, 1997. *Id*. at 5, ¶ IV.A.2(j)-(m).

Given the recommendations below, it is not necessary to resolve the discrepancy at this time. The parties may explore it in the context of Houghton's second claim.

### A. Unlawful Seizure

Houghton alleges that his property was unlawfully seized on March 11, 1997. In Montana, the statute of limitations for actions under 42 U.S.C. § 1983 is three years. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985); Mont. Code Ann. § 27-2-204(1) (1997). "A federal claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991) (internal citations and quotations omitted); *see also DeAnza Properties X, Ltd. v. County of Santa Cruz*, 936 F.2d 1084, 1086 (9th Cir. 1991). Houghton knew of the seizure when it occurred, on March 11, 1997, and he knew on March 12, 1997, that he would not be permitted to pay for the computer and obtain its release from police custody. The statute of limitations expired, at the latest, on March 12,

2000. At the earliest, Houghton filed his Complaint ten months too late, on January 15, 2001.

Tolling of the limitations period is also governed by state law. *Hardin v. Straub*, 490 U.S. 536, 539 (1989); *Wilson*, 471 U.S. at 269. Montana statutory law permits extension of the limitations period for plaintiffs who are minors or who have been civilly committed pursuant to state law. *See* Mont. Code Ann. § 27-2-401 (1997). Houghton does not fit those criteria.

Montana common law permits equitable tolling if the defendant somehow misled the plaintiff in order to prevent his timely filing, *see, e.g., Mellem v. Kalispell Laundry and Dry Cleaners*, 774 P.2d 390, 391-92 (Mont. 1987), or if a plaintiff pursues other legal remedies, *see, e.g., Hash v. U.S. West Communications Servs.*, 886 P.2d 442 (Mont. 1994). There was no concealment regarding the seizure of the computer or its retention beyond the following day. While Houghton could have pursued other legal remedies, such as petitioning a judge for the release of the computer, *see* Mont. Code Ann. § 46-5-312 (1997), or filing a claim under the Montana Tort Claims Act, Mont. Code Ann. §§ 2-9-101 to -318 (1997), he does not claim that he did so or that resolution of those actions prevented Houghton from filing within a reasonable time after the expiration of the statute of limitations. Houghton's first claim should be dismissed with prejudice as barred by the statute of limitations.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 7

### B. Unlawful Forfeiture

Houghton contends that he was unlawfully permanently deprived of the computer and its contents. Taking Houghton's allegations at face value, as the Court is required to do at this stage, he states a claim sufficient to warrant service of the Complaint on Defendants Comfort and St. John.

Possibly a judge ordered the computer to be released to Glacier Bank after Houghton was given notice of the proposed release, in conformity with Mont. Code Ann. §§ 46-5-306 to -309 (1997). Possibly Houghton applied to a judge for the return of the computer, pursuant to Mont. Code Ann. § 46-5-312, and his petition was denied.

However, if, as Houghton alleges, the computer was seized from him and simply given to Glacier Bank, with no opportunity for Houghton to present his claim of a property interest to an impartial decision-maker, then his due process rights might have been violated. It is not clear, though it is possible, that the statute of limitations bars the claim, because it is not clear when Houghton knew or should have known that the computer had been

released to Glacier Bank.[4]  Defendants Comfort and St. John[5] must respond to this claim.

### C. Giving of Testimony in Violation of Due Process

Witnesses are absolutely immune from civil liability[6] for statements made in sworn testimony, even if they commit perjury, and even if they are law enforcement officers.  See *Briscoe v. LaHue*, 460 U.S. 325, 342-46 (1983); *Paine v. City of Lompoc*, 265 F.3d 975, 981-84 (9th Cir. 2001); *Holt v. Castaneda*, 832 F.2d 123, 124-27 (9th Cir. 1987).  While immunity does not apply to "complaining witnesses," i.e., persons whose allegations serve to bring about a prosecution, *see Paine*, 265 F.3d at 981 n.2, Comfort and Peterson were not the complaining witnesses in Houghton's federal criminal prosecution.  Houghton claims that the reason he

---

[4]  Elsewhere, Houghton asserts that he first learned of the computer's release to Glacier Bank sometime after November 6, 1999, when St. John responded to a letter in which Houghton asked that the computer be returned to him.  See Compl. at 5, ¶ IV.B.5-7, *Houghton v. Sept*, No. CV 05-141-BLG-RWA (D. Mont. filed Oct. 4, 2005).

[5]  While Houghton's allegations arise, in part, from St. John's supervisory role, see Compl. at 7, ¶ IV.B.(1)(b), he also alleges that St. John was personally responsible for ensuring that Houghton's claim to the property was properly adjudicated.  That is sufficient, for present purposes, to require an answer from St. John.

[6]  Witnesses may be prosecuted criminally for perjury, but Houghton has no standing to compel prosecution.  "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

was prosecuted was to cover up for Comfort's and Peterson's unlawful disposition of the computer seized in 1997, see Compl. at 12, ¶ IV.C.2(g), but that claim does not suffice to make them the complaining witnesses. The federal prosecution could not have gone forward without the FBI's seizure, on January 29, 1999, of another computer containing images of child pornography. See Compl. at 4, ¶ IV.B.2, *Houghton v. Sept*, No. CV 05-141-BLG-RWA (D. Mont. filed Oct. 4, 2005). The persons who effected that seizure and testified about the images on that computer would be the complaining witnesses in the federal prosecution.

This leaves the matter of the "Billings Police Department Narrative" and "Billings Police Report" produced by Comfort and Peterson, respectively. Absolute witness immunity does not extend to the fabrication of evidence. See *Paine*, 265 F.3d at 983 ("absolute witness immunity does not shield an out-of-court, pretrial conspiracy to engage in non-testimonial acts such as fabricating or suppressing physical or documentary evidence or suppressing the identities of potential witnesses."). Since Houghton did not supply the documents, the Court does not know whether they might have been useful for impeachment purposes or whether they were fully consistent with the officers' testimony.

However, to whatever extent the documents were material to the case against Houghton, he is barred from proceeding with an action under 42 U.S.C. § 1983 at this time, under the rule of *Heck v.*

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 10

*Humphrey*, 512 U.S. 477 (1994). There, the Supreme Court held that, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid*, a § 1983 plaintiff must prove that the conviction or sentence *has been* reversed." *Id*. at 486-87 (emphases added). If the allegedly fabricated documents were useful at trial to support Houghton's conviction – for example, by preventing defense counsel from suggesting that their testimony was recently fabricated – then Houghton's success in proving in this action that they were fabricated would render his conviction invalid, and *Heck* bars him from proceeding under § 1983. If they were irrelevant or actually helpful to him at trial, then Houghton cannot show that the officers' fabrication of them affected his right to due process. Either way, Houghton's third claim for relief should be dismissed in its entirety.

### RECOMMENDATION

Based on the foregoing, the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), **RECOMMENDS** that Houghton's first claim be DISMISSED WITH PREJUDICE and his third claim be DISMISSED WITHOUT PREJUDICE.

The Clerk of Court shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the


<p/>

Plaintiff. Plaintiff is advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed or delivered to prison authorities for mailing within twenty (20) calendar days after the date on the certificate of mailing below, or objection is waived.

DATED this 10th day of February, 2006.

Richard W. Anderson
United States Magistrate Judge


FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 12
